```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  AUG 0 2 2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WESTLB AG,

        Plaintiff,

    -v-                                   No.  11 Civ. 5398 (LTS)(AJP)

BAC FLORIDA BANK, U.S. MORTGAGE
FINANCE, LLC and U.S. MORTGAGE
FINANCE II, LLC,

        Defendants.

-------------------------------------------------------x

### MEMORANDUM ORDER

        Plaintiff WestLB ("Plaintiff" or "WestLB") is the lender under certain mortgage

agreements, pursuant to which U.S. Mortgage Finance, LLC ("USMF") purchased mortgages

from BAC Florida Bank ("BAC"), which also services the mortgages on a day-to-day basis.

WestLB commenced this action in August 2011, claiming that USMF and BAC (collectively,

"Defendants") had breached the relevant  mortgage and servicing agreements by failing to

dispose of certain foreclosed properties.  WestLB has charged expenses of this litigation against

revenues produced by the mortgage portfolios.  On April 3, 2012, USMF moved for a

preliminary injunction, seeking to prevent WestLB from using the funds at issue to pay for its

litigation expenses.  In addition to the principal briefings, the Court has considered carefully the

following submissions: 1) a letter from WestLB, dated June 4, 2012, regarding certain deposition

testimony of Henry Howard; a letter from USMF, dated June 7, 2012, in response; and a second

letter from WestLB, dated June 8, 2012, in response to USMF's June 7, 2012, letter; 2) a letter

from USMF, dated June 7, 2012, regarding the deposition of Robert Rabbino, and a letter from

WestLB, date June 12, 2012, in response; 3) a letter from USMF, dated June 18, 2012, proffering allegations as to WestLB's solvency; 4) a letter from WestLB, dated July 3, 2012, and a letter from USMF, dated July 10, 2012, in response.[1]  For the following reasons, the motion for a preliminary injunction is denied.  This Memorandum Order constitutes the Court's findings of fact and conclusions of law for purposes of Federal Rules of Civil Procedure 52 and 65.

<u>Background</u>

The following facts are found to be established, based on the parties' evidentiary proffers, except to the extent characterized below as allegations.

<u>The Parties' Business Arrangement</u>

On September 29, 2005, and March 29, 2006, USMF and WestLB entered into two Wholesale Warehouse Mortgage Agreements (the "WWMAs"), pursuant to which USMF borrowed $360 million from WestLB (the "Mortgage Loan") in order to purchase two portfolios of residential mortgage loans (the "Portfolios") from co-defendant BAC Florida Bank ("BAC"). (Affidavit of Robert A. Rabbino (hereinafter "Rabbino Aff.") ¶ 2; Ex. A.)  The WWMAs gave WestLB a security interest in the mortgages as collateral for the Mortgage Loan.  (<u>Id.</u>)  USMF and WestLB retained BAC to service the Portfolios pursuant to two servicing agreements (the "Servicing Agreements").  (Rabbino Aff. ¶ 3; Ex. B.)  Additionally, USMF, WestLB, and BAC entered into two custodial agreements (the "Custodial Agreements") with Bank of New York Mellon ("BONY").  (Rabbino Aff. ¶ 4; Ex. C.)  The Custodial Agreements provided that BONY

---

[1]     The Court has filed the referenced letters, without attachments, on the ECF system. The parties are directed to promptly file complete copies of the letters, with attachments.

would maintain and distribute all funds generated by the Portfolios.  (Id.)

Funds generated by the Portfolios are consolidated in two Distribution Accounts, from which BONY periodically distributes the funds according to the waterfall arrangement (the "Waterfall") prescribed by the Custodial Agreements.  (See Rabbino Aff., Ex. C, § 8.)  The Waterfall provides that BONY shall distribute the funds from the Distribution Accounts as follows:

First, to WestLB for "any unpaid expenses and indemnities payable by the Borrower [USMF] to the Agent [WestLB], the Lenders [WestLB] and the Custodian under any provision of this Agreement or the other Transaction Documents."  (Id. § 8(c)(ii).)

Second, to WestLB for payment of "all accrued and unpaid interest" owed by USMF.  (Id. § 8(c)(iii).)

Third, to USMF for administrative expenses.[2]  (Id. § 8(c)(v).)

Fourth, if necessary, to replenish the funds in two Reserve Accounts.[3]  (Id. § 8(c)(vi).)

Finally, if additional funds remain, they are distributed to WestLB as payment of

---

[2]   USMF uses this administrative fee, which is its sole current source of revenue, primarily to fund its legal fees.  While Henry Howard, USMF's president and chief executive officer, initially stated that USMF relies on its administrative fee "to cover its overhead and expenses, including rent, salaries, payment of legal fees to its counsel, and so forth" (Howard Supp. Aff. ¶ 8), he later recanted, and clarified that USMF does not actually pay rent or salaries.  (See Howard Dep. Tr., attached as Ex. 1 to WestLB June 4, 2012 Letter.)  In fact, USMF relies on the administrative fee solely to cover its "overhead expenses, including payment of legal fees and so forth."  Id.  The "so forth" refers to Mr. Howard's own travel expenses and expenses incurred in connection with USMF's accounting and reporting obligations.  (Id.; see also Howard Dep. Tr. at 176:10 - 177:11.)

[3]   The Reserve Accounts contain extra funds and are meant to ensure that a shortfall in the monthly funds generated by the Portfolios does not interrupt USMF's ability to pay interest on the Mortgage Loan.

principal on USMF's loans.  (Id. § 8(c)(viii).)

      Beginning in November 2010, WestLB sent BONY invoices from its counsel, Akin Gump Strauss Hauer & Feld ("Akin Gump"), seeking reimbursement for litigation expenses as indemnification under the WWMAs, and demanding payment from the § 8.3(c)(ii) layer of the Waterfall.  (Affidavit of Henry Howard (hereinafter "Howard Aff.") ¶ 8.)  In November 2010, February 2011, and May 2011, WestLB obtained $105,000 from the § 8(c)(ii) layer of the Waterfall for payment of its litigation expenses.  (Id. ¶ 9.)  In December of 2011, WestLB submitted legal fee invoices of $372,727.78 to BONY, again seeking reimbursement from the § 8(c)(ii) level of the Waterfall.  (Id. ¶ 11.)  BONY refused to pay this request, as it would have left insufficient funds in the Distribution Accounts to cover USMF's loan interest payments or administrative fee.  (Id.)  At WestLB's insistence, BONY ultimately paid the $372,727.78 of legal fees out of the Reserve Accounts, which subsequently had to be replenished with money that would have otherwise been distributed to WestLB as payment of principal on USMF's loans.  (Id. ¶¶ 12 - 14.)

      On average, the Portfolios produce revenues of $550,000 per month. (Supplemental Affidavit of Henry B. Howard (hereinafter "Howard Supp. Aff.") ¶ 2).  USMF's monthly interest payments to WestLB are $115,000.  (Id. ¶ 3.)  As of March 2012, WestLB owed Akin Gump approximately $746,286 in legal fees, and was accruing new expenses at a rate of approximately $250,000 per month.  (Elberg Supp. Decl. ¶ 6.)

WestLB's Restructuring

      WestLB is a German bank, owned by local governments and regional savings banks, that originally functioned as a central depository for state owned savings banks.  In the

early 2000s, WestLB expanded into international commercial banking, a venture that failed and resulted in three bailouts, and ultimately, an order by the European Commission to restructure. (See Rabbino Aff. ¶ 6; Supplemental Declaration of Amos Elberg (hereinafter "Elberg Supp. Decl."), Ex. E.)  USMF has proffered relevant WestLB financial statements, and news reports regarding WestLB's past bailouts and transactions in connection with the European Commission's order, which WestLB characterizes as restructuring and USMF characterizes as a liquidation that will render WestLB insolvent.  WestLB has reported that it closed the 2011 fiscal year with 167.9 billion Euros in assets and a pre-tax profit of 37 million Euros.  (Elberg Supp. Decl., Ex. C.)  However, the company also had 164.9 billion Euros in liabilities and, after taxes, posted a loss of 48 million Euros.  (Id.)  WestLB was required under the European Commission's order to sell all its assets by June 30, 2012, and any assets unsold at that point were to be transferred to Erste Abwicklungsanstalt (EAA), a German government-created entity tasked with taking over and winding up WestLB's risk exposures.  (Id., Exs. D & E.)  The remainder of WestLB is to be renamed Portigon AG Financial Services ("Portigon"), and will provide risk and portfolio management services to third parties.  (Id., Ex. E)  Portigon will be 100% owned by the German state of North Rhine-Westphalia, and is slated for future privatization.  (Id.)[4]

       On April 3, 2012, USMF filed this motion for a preliminary injunction barring WestLB from obtaining reimbursement of its litigation expenses during the pendency of this

---

[4]      While WestLB alleged that the state of North Rhine-Westphalia was to inject 1 billion Euros into Portigon by the beginning of July (Rabbino Aff. ¶ 10), it is unclear whether this injection of equity occurred as scheduled.  USMF initially alleged that the legislature of North Rhine-Westphalia had not approved this expenditure (Elberg Supp. Decl., Ex. F), but more recently argued that, even if the injection of equity had occurred, it was not significant, because the 1 billion Euros were necessary to partially repay an earlier 3 billion Euros in bailout funds.  (USMF July 10, 2012, Letter.)

action without prior Court approval.  USMF alleges that WestLB's legal expenses will likely be incurred and submitted at a rate that would wipe out the administrative fee and lower layers of the Waterfall and "artificially" force USMF to incur events of default.  The parties stipulated that WestLB would cease seeking reimbursement of its litigation expenses from the Waterfall pending the Court's determination of the motion.

Discussion

A party seeking a preliminary injunction must establish, by a preponderance of the evidence, "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Cacchillo v. Insmed, Inc., 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotations omitted); see also Jermyn v. Best Buy Stores, L.P., No. 08 Civ. 214(CM), 2010 WL 3911509, at *2 (Sept. 28, 2010).[5]  "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," Meringolo v. Power2ship, No. 03 Civ. 4476 PKL, 2003 WL 21750009, at *3 (S.D.N.Y. Jul. 28, 2003), and is "certain and imminent harm for which a monetary award does not adequately compensate." Psihoyos v. John Wiley, 2011 WL 4634172, at *3, n. 7 (S.D.N.Y. Oct. 4, 2011).  The decision to issue injunctive relief "rests in the sound discretion of the district court which, absent abuse of discretion, will not be disturbed on appeal." Meringolo, 2003 WL 21750009, at *3 (internal quotations omitted).  However, "a preliminary injunction is an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a *clear*

---

[5]     Because the Court finds that USMF has not shown irreparable harm, it does not address USMF's likelihood of success on the merits.

*showing*, carries the burden of persuasion." Gwathmey Siegel Kaufman & Associates

Architects, LLC v. Mitchell Rales, No. 12 Civ. 1983, 2012 WL 2247938, at *2 (June 15, 2012).

USMF contends that it will suffer irreparable harm if WestLB continues funding

its litigation expenses from the Waterfall because: 1) if WestLB's expenses are large enough,

they may leave insufficient funds in the Distribution Accounts to pay USMF's administrative

fee; 2) if WestLB's expenses are large enough, they may leave insufficient funds in the

Distribution Accounts to cover USMF's interest payments to WestLB, exposing USMF to a risk

of default; and 3) WestLB is insolvent and will be unable to pay monetary damages to USMF at

the conclusion of this litigation.  Having reviewed thoroughly the parties' submissions and

supplementary proffers, the Court concludes that USMF has failed to sustain its burden of

demonstrating by a preponderance of the evidence that it will suffer irreparable harm in the

absence of preliminary injunctive relief.

The "mere possibility of irreparable harm is insufficient to justify the drastic

remedy of a preliminary injunction." Hidalgo v. NY, No. 11-CV-5074(JS)(ARL), 2011 WL

5838494, at *4 (E.D.N.Y. Nov. 21, 2011); see also Vann v. Fischer, No. 11-CV-1958(JPO),

2011 WL 6788404, at *1 (S.D.N.Y. Dec. 19, 2011) ("to show irreparable harm, a plaintiff must

demonstrate that . . . he will suffer an injury that is neither remote nor speculative, but actual and

imminent.").  USMF has failed to present evidence sufficient to support the necessary finding

that WestLB's passage of its litigation expenses through the Waterfall will drain the accounts to

such a degree that USMF will not be able to pay either its administrative fee or the interest

payments due to WestLB.

While the evidence shows that WestLB is currently accruing new legal expenses

at a rate of approximately $250,000 per month (Elberg Supp. Decl. ¶ 6), USMF asserts that, as

the litigation proceeds, WestLB's monthly litigation expenses are likely to be significantly higher than $250,000. (See id.) USMF also argues that WestLB is likely to submit its reimbursement demands in cumulative amounts that will exceed the portfolio revenues and reserves available to fund the Waterfall ((USMF's Reply Memorandum of Law at 5), and outlines how the application of WestLB's litigation expenses to the Waterfall would consume the money in the Distribution Accounts and affect USMF's ability to pay both interest on the Mortgage Loan and receive its administrative fee. (Howard Supp. Aff. ¶¶ 3-8.) However, USMF's allegations are largely speculative and conclusory. For example, while USMF notes that WestLB's litigation expenses to date would consume all the money in the Distribution Accounts for the first two months, USMF acknowledges that, by the third month, even if $400,000 were withdrawn in legal fees, the Distribution Account would still contain $150,000, which is enough to cover USMF's interest payment, and could possibly be enough to cover both USMF's administrative fee[6] and permit a payment to replenish the Reserve Accounts. (Id. ¶ 5.) USMF's principal argument appears to be that, were WestLB permitted to pay its legal expenses from the Distribution Accounts, those expenses "would consume the majority of new collections, the bulk of what remains would be paid to WestLB in interest," and any remaining funds would be exhausted, at best, in replenishing the Reserve Accounts, leaving no money available to fund principal paydowns, and ultimately increasing the cost and duration of USMF's loan obligation. (See USMF's Reply Memorandum of Law at 5.)

USMF's case for a preliminary injunction is thus premised on the *possibility* of harm. Its speculation is insufficient to establish that USMF is at risk of "imminent [or] actual" injury. Meringolo, 2003 WL 21750009, at *4. Indeed, the invoices upon which USMF bases its

---

[6]      USMF has not disclosed the average amount of its monthly administrative fee.

calculations indicate that, after two months, the Distribution Accounts will contain enough funds to cover both WestLB's litigation expenses and USMF's interest payments and, most likely, also contain enough funds to cover USMF's administrative fee. (See Howard Supp. Aff. ¶¶ 5 - 6.) Nor has USMF tendered evidence sufficient to demonstrate that, even if the Distribution Accounts lacked the money to cover USMF's administrative fee, USMF's inability to pay the fee would constitute a threat to USMF's "financial viability" sufficient to satisfy the requirement of irreparable harm. See Five Star Development Resort Communities v. iStar RC Paradise Valley, No. 09 Civ. 2085(LTS), 2010 WL 1005169, at *4 (a threat to a business' "ongoing financial viability can, in and of itself, satisfy the irreparable harm requirement"). USMF uses its administrative fee primarily to pay its legal expenses, its CEO's travel expenses, and any other miscellaneous expenses incurred in connection with its accounting and reporting obligations. (See Howard Dep. Tr. At 176:10 - 177:11, attached as Ex. 1 to WestLB June 4, 2012 Letter.) USMF's proffers are insufficient to meet its burden of demonstrating that WestLB's litigation expense reimbursement demands constitute a sufficient threat to USMF's financial viability to meet the irreparable harm standard.

USMF's next argument in support of irreparable harm is that WestLB is on the brink of insolvency and may not be able to pay money damages at end of litigation. While, "as a general matter, [monetary injury] usually does not constitute irreparable harm, [it] *may* suffice to establish irreparable harm in situations where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state." Everseed Enterprises v. Skaarup Fortune Shipping, No. 09 Civ. 1319(LBS), 2010 WL 1541420, at *2 (S.D.N.Y. Apt. 15, 2010). However, "even in those unusual circumstances where monetary loss may support a finding of irreparable harm . . . conclusory assertions of [a]

defendant['s] financial weakness do not demonstrate a likelihood of such harm." Fluor Daniel

Argentina, Inc. v. ANZ Bank, 13 F. Supp. 2d 562, 564 (S.D.N.Y. 1998).  USMF contends that

WestLB is a failed bank that has been repeatedly bailed out, produced massive net losses for the

past several years, and is in the process of liquidating.  In particular, USMF asserts that, at the

conclusion of fiscal year 2011, WestLB posted an after-tax loss of 48 million Euros; that

WestLB is heavily exposed to European sovereign debt; that North Rhine-Westphalia's injection

of equity is either uncertain or irrelevant; and that WestLB's restructuring is endangered because

potential purchasers have discovered that the bank is burdened by previously unknown

liabilities.  (See, e.g., Elberg Supp. Decl., Exs. C - F; USMF June 18, 2012, Letter.)

      WestLB counters, asserting that it has Tier I capital ratios of 8.8% and Total

Capital ratios of 13.8%, as well as investment grade ratings; is in the process of restructuring;

and will, after that restructuring, be a fully solvent, government-owned entity conducting loan

portfolio management services.  (Rabbino Aff. ¶¶ 6-9.)  USMF attacks Mr. Rabbino's affidavit,

alleging that he has no personal knowledge of WestLB's restructuring plan or financial situation.

(See USMF June 7, 2012, Letter re: Robert Rabbino.)  In turn, WestLB attacks the credibility of

Henry Howard, claiming that his allegations regarding WestLB's solvency are pure conjecture.

(See WestLB June 12, 2012, Letter re: Robert Rabbino.)

      Regardless of Mr. Rabbino or Mr. Howard's respective qualifications to opine on

WestLB's financial viability, the Court finds that USMF has failed to proffer evidence sufficient

to meet the high standard required to satisfy a finding of current or imminent insolvency.  See,

e.g., Meringolo, 2003 WL 21750009, at *3 - 4 (no finding of insolvency despite plaintiff's

allegations that defendant, a "development stage company," had generated almost no revenue

from its inception, had never earned a profit, and was being drained of resources); Gen Transp.

<u>Services v. Kemper Insurance Co.</u>, No. 5:03-CV-620, 2003 WL 21703635, at *3-4 (N.D.N.Y. June 25, 2003) (no finding of insolvency despite defendant's default on $700 million of its notes, credit rating downgrade, investigation by regulatory agencies, and substantially reduced workforce).  USMF's assertions that WestLB is insolvent are "speculative and cannot satisfy [the] burden to show that plaintiff is likely to suffer irreparable harm if equitable relief is denied." <u>Meringolo</u>, 2003 WL 21750009, at *5.


## **Conclusion**

Accordingly, the motion for a preliminary injunction is denied due to USMF's failure to show irreparable injury.


Dated: New York, New York
      August 2, 2012

 

LAURA TAYLOR SWAIN
United States District Judge