UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WESTLB AG,

        Plaintiff,

  -v-                                    No. 11 Civ. 5398 (LTS)(AJP)

BAC FLORIDA BANK, U.S. MORTGAGE
FINANCE, LLC and U.S. MORTGAGE
FINANCE II, LLC,

        Defendants.

-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 0 2 2012

<u>MEMORANDUM ORDER</u>

        Plaintiff WestLB ("Plaintiff" or "WestLB") is the lender under certain mortgage agreements, pursuant to which U.S. Mortgage Finance ("USMF") purchased mortgages from BAC Florida Bank ("BAC"), which also services the mortgages on a day-to-day basis. WestLB commenced this action in August 2011, claiming that USMF and BAC (collectively, "Defendants") had breached the relevant mortgage and servicing agreements by failing to dispose of certain foreclosed properties. WestLB has charged expenses of this litigation against revenues produced by the mortgage portfolios. On April 3, 2012, USMF moved for a preliminary injunction, seeking to prevent WestLB from using the funds at issue to pay for its litigation expenses, and on August 2, 2012, this Court denied that motion. While the preliminary injunction motion was pending, USMF petitioned Magistrate Judge Peck for an order compelling WestLB to produce unredacted billing records related to its litigation expenses. Judge Peck denied this request as premature. USMF now objects to Judge Peck's ruling. The Court has reviewed thoroughly both parties' submissions and, for the following reasons, USMF's objection

is overruled.

## Background

USMF and WestLB are parties to two Wholesale Warehouse Mortgage Agreements (the "WWMAs"), pursuant to which USMF borrowed $360 million from WestLB (the "Mortgage Loan") in order to purchase two portfolios of residential mortgage loans (the "Portfolios") from co-defendant BAC Florida Bank ("BAC"). (Affidavit of Robert A. Rabbino in Support of WestLB's Memorandum of Law in Opposition to the Injunction Motion (hereinafter "Rabbino Aff.") ¶ 2; Ex. A.) The WWMAs gave WestLB a security interest in the mortgages as collateral for the Mortgage Loan. (Id.) USMF and WestLB retained BAC to service the Portfolios pursuant to two servicing agreements (the "Servicing Agreements"). (Rabbino Aff. ¶ 3; Ex. B.) Additionally, USMF, WestLB, and BAC entered into two custodial agreements (the "Custodial Agreements") with Bank of New York Mellon ("BONY"). (Rabbino Aff. ¶ 4; Ex. C.) The Custodial Agreements provided that BONY would maintain and distribute all funds generated by the Portfolios, in accordance with a "waterfall" arrangement (the "Waterfall"). (Id.) The second level of the Waterfall (Section 8.3(c)(ii) of the Custodial Agreements) provides that the funds generated by the Portfolios will be applied to "any unpaid expenses and indemnities payable by the Borrower [USMF] to the Agent [WestLB], the Lenders [WestLB] and the Custodian under any provision of this Agreement or the other Transaction Documents." (Id. § 8(c)(ii).)

Beginning in late 2010, WestLB began sending BONY invoices from its counsel, Akin Gump Strauss Hauer & Feld ("Akin Gump"), seeking reimbursement for litigation expenses as indemnification under the WWMAs, and demanding payment from the § 8.3(c)(ii)

layer of the Waterfall. (Affidavit of Henry Howard in Support of USMF's Motion for a Preliminary Injunction (hereinafter "Howard Aff.") ¶ 8.) To date, WestLB has obtained several hundred thousand dollars from the § 8(c)(ii) level of the Waterfall for payment of its litigation expenses. (Id. ¶¶ 8-14.) WestLB commenced this action on August 3, 2011, asserting the following causes of action: (1) breach of contract against BAC and USMF for violating the Servicing Agreement; (2) specific performance to address Defendants' breaches; (3) waste; and (4) indemnification. On December 16, 2011, this Court referred the action to Magistrate Judge Andrew J. Peck for general pre-trial management.

On April 3, 2012, USMF moved for a preliminary injunction, seeking to prevent WestLB from using funds from the Waterfall to pay for its litigation expenses without prior Court approval. The Court denied the motion for a preliminary injunction on August 2, 2012, finding that USMF had not demonstrated the requisite risk of irreparable harm.

Shortly after filing its motion for a preliminary injunction, USMF wrote to Magistrate Judge Peck, seeking an order compelling the production of "unredacted invoices, bills, timesheets, and diary entries for the attorneys' fees WestLB would charge to the [Waterfall]" if the motion for a preliminary injunction were denied. (April 10, 2010 Letter from Amos B. Elberg, attached as Ex. A to Declaration of S. Gulati.) USMF argued that, because WestLB is seeking to recover attorneys' fees as part of this action, it has put "at issue" whether its litigation expenses are reasonable, precluding attorney-client privilege or work product doctrine protection of the Akin Gump billing records. USMF requested that Judge Peck resolve the issue on an expedited basis, in light of the preliminary injunction motion then pending before this Court.

Judge Peck held a conference on April 16, 2012, at which time he concluded that

USMF's request for unredacted billing records was " terribly premature." (Tr. of April 16 Hearing at 9, attached as Exhibit A to the Declaration of Amos Elberg in Supp. of USMF's Objection.) He stated that:

> [E]ither Judge Swain will grant the preliminary injunction, in which case plaintiff and its law firm will not be able to get any more money out of the I'll call it the escrow, for lack of a better term, or they will, in which case the you could all fight about how much is the right amount and how much is too much. But that I am certainly disinclined on this motion, without full-scale briefing, which would eliminate any benefit of expedited proceedings, to say that there has been a complete waiver of the privilege or, indeed, any waiver of the privilege, an issue that you both dispute . . . And while I generally rule on discovery from the bench, privilege deserves a further full briefing.

(Id. at 2.) Accordingly, Judge Peck denied USMF's request for discovery, "without prejudice to renewal at such time as Judge Swain decides the preliminary injunction motion and further subject to you seeing what has been redacted and what hasn't been redacted." (Id. at 9.)

After the April 16, 2012, conference, WestLB voluntarily provided USMF with redacted billing records. Judge Peck held a second conference on April 25, 2012, at which time USMF indicated that it was not satisfied with the redacted materials produced by WestLB, and that it wished to brief the issue of whether WestLB had waived its privilege. (Tr. of April 25 Hearing at 2, attached as Exhibit B to the Declaration of Amos Elberg in Supp. of USMF's Objection.) Judge Peck again suggested that USMF wait to brief the issue of privilege until after the preliminary injunction motion was decided (id. at 7) but told USMF that, if it wished to brief the issue immediately, it would receive a decision in "several months." (Id. at 2.) USMF now objects to Judge Peck's April 16, 2012 ruling.

## Discussion

Objections to a magistrate judge's ruling should be sustained only if the ruling

was "clearly erroneous or contrary to law." Collens v. City of NY, 222 F.R.D. 249, 251 (S.D.N.Y. 2004); see also 28 U.S.C. § 636(b)(1)(A); Federal Rule of Civil Procedure 72(a). An order is "clearly erroneous" when the reviewing court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Collens, 222 F.R.D. at 251. An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." Id. When a case has been referred to a magistrate judge for general pretrial management, the magistrate judge's management of discovery is afforded "great deference." Lowrance v. Achtyl, 20 F.3d 529, 534 (2d Cir. 1994), and a party seeking to overturn a magistrate judge's discovery ruling bears "a heavy burden." Citicorp v. Interbank Card Ass'n, 87 F.R.D. 43, 46 (S.D.N.Y. 1980). It is well within a magistrate judge's discretion to set a schedule for the resolution of pretrial discovery disputes, and to deny a premature motion without prejudice. Jiggets v. AlliedBarton Sec. Servs., 423 F. App'x 24, 25 (2d Cir. 2011) (magistrate judge did not abuse his discretion in denying motion to compel discovery as premature); see also Reino de Espana v. Am. Bureau of Shipping, Inc., No. 03 Civ. 3573 (LTS)(RLE), 2008 WL 3851957, at *2-4 (S.D.N.Y. Aug. 18, 2008) (approving several of the magistrate judge's discovery-related rulings, and noting that a magistrate judge has "broad discretion" in "managing discovery issues and other pre-trial affairs").

Here, the ruling at issue is Judge Peck's denial of USMF's request to resolve the issue of whether WestLB waived the attorney-client and/or work-product privilege on an expedited basis, and in advance of this Court's ruling on USMF's motion for a preliminary injunction. Judge Peck did not reach the merits of USMF's contention, and never actually decided whether WestLB had or had not waived the privilege. In fact, he specifically refused to rule on that issue, noting that such a ruling would be premature at this stage of the litigation.

Judge Peck's April 16, 2012, ruling is therefore extremely narrow - he simply declined to decide the issue of privilege on an expedited basis. USMF advances no argument that Judge Peck's refusal to rule on the issues of waiver and privilege on an expedited basis was "clearly erroneous" or "contrary to law," and this Court concludes that Judge Peck's decision to postpone any ruling during the pendency of the Preliminary Injunction motion was well within his broad discretion to manage discovery-related issues.

## Conclusion

For the foregoing reasons, USMF's Objection to Judge Peck's ruling is overruled.

Dated: New York, New York
       August 2, 2012

_____
LAURA TAYLOR SWAIN
United States District Judge