UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

WESTLB AG,

        Plaintiff,

  -v-                                          No. 11 Civ. 5398 (LTS)(AJP)

BAC FLORIDA BANK, U.S. MORTGAGE
FINANCE, LLC and U.S. MORTGAGE
FINANCE II, LLC,

        Defendants.

------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiff WestLB ("Plaintiff" or "WestLB") is the lender under certain mortgage agreements, pursuant to which U.S. Mortgage Finance, LLC ("USMF") purchased mortgages from BAC Florida Bank ("BAC"), which also services the mortgages on a day-to-day basis. WestLB commenced this action in August 2011, claiming that USMF and BAC (collectively, "Defendants") had breached the relevant mortgage and servicing agreements by failing to dispose of certain foreclosed properties as required under the relevant transaction documents. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332.

WestLB filed an Amended Complaint ("Complaint") on November 8, 2011. Both BAC and USMF have moved to dismiss the Amended Complaint. The Court has reviewed carefully all of the parties' submissions and, for the following reasons, BAC and USMF's motions to dismiss are granted.

## BACKGROUND

Unless otherwise indicated, the following allegations are taken from the Amended Complaint and, for purposes of this motion practice, assumed to be true.

On September 29, 2005, and March 29, 2006, WestLB entered into two Wholesale Warehouse Mortgage Agreements (collectively, the "WWMA") with USMF. (Compl. ¶ 3.) Pursuant to the WWMA, WestLB loaned USMF $360 million to facilitate USMF's purchase of mortgage loans (the "Mortgages") from BAC. (Compl. ¶¶ 4-5.) The Mortgages relate principally to numerous residential properties in Southern and Central Florida. (Compl. ¶ 4.) The WWMA grants WestLB a security interest in the Mortgages as collateral for WestLB's loan. (Compl. ¶¶ 4 - 5.) The repayment term of the loan extends to May 1, 2038. (Compl., Exh. 1, § 2.1.) Between September 1, 2005, and April 1, 2006, USMF and BAC entered into four purchase agreements (collectively, the "Purchase Agreement"), pursuant to which USMF acquired the Mortgages. (Compl. ¶ 29.) The Purchase Agreement names WestLB as a third-party beneficiary. (Compl. ¶ 29, Ex. 5, § 9.9.). In addition to the Purchase Agreement, USMF and WestLB entered into a Servicing Agreement with BAC. (Compl. ¶¶ 6 - 7, Ex. 3.) Pursuant to the Servicing Agreement, BAC agreed to manage the Mortgages and the underlying properties for the benefit of both WestLB and USMF. (Compl. ¶8.) The WWMA, Purchase Agreement, and Servicing Agreement will be referred to collectively as the "Transaction Documents."

Section 3.01 of the Servicing Agreement provides that:

The Servicer [BAC], as an independent contract servicer, shall service and administer the Mortgage Loans for the benefit of the Owner [USMF], the Agent [WestLB] and the Lenders [WestLB] and shall have full power and authority, acting alone, to do any and all things in connection with such servicing and administration which the Servicer may deem necessary or desirable and

consistent with the terms of this Agreement and each other Transaction Document.

(Compl. Ex. 3, § 3.01) If the mortgagors of the underlying properties default on their loans, BAC must foreclose on the properties, rendering them "Real Estate Owned" or "REO Properties." (Compl. ¶ 9.) Section 3.06 of the Servicing Agreement dictates how BAC is to manage any such REO properties, and provides that:

> The Servicer [BAC] shall manage, conserve, insure, protect and operate each REO Property for the Owner [USMF] and the Agent [WestLB] solely for the purpose of its prudent and prompt disposition and sale. The Servicer shall, either itself or through an agent selected by the Servicer, manage, conserve, insure, protect and operate the REO Property in the same manner that it manages, conserves, insures, protects and operates other foreclosed property for its own account, and in the same manner that similar property in the same locality as the REO Property is managed. The Servicer shall attempt to sell the same (and may temporarily rent the same) on such terms and conditions as the Servicer deems to be in the best interest of the Owner [USMF], the Agent [WestLB] and the Lenders [WestLB].

(Compl. Ex. 3, § 3.06.) The Servicing Agreement sets forth how BAC is to dispose of the REO Properties:

> The disposition of REO Property shall be carried out by the Servicer in a commercially reasonable manner for cash at such price, and upon such terms and conditions, as the Servicer deems to be in the best interest of the Owner, the Agent and the Lenders and, as soon as practicable, the Servicer shall be entitled to be paid or reimbursed for all standard and customary costs and expenses of such sale, including, without limitation, all Liquidation Expenses; <u>provided</u> the Owner [USMF] may direct the Servicer [BAC] with respect to any such disposition so long as the Agent [WestLB] consents to such direction (which consent shall not be unreasonably withheld or delayed).

(<u>Id.</u> (emphasis in original).) Any proceeds from BAC's sale of REO Properties are to be applied to the payment of interest and principal owed by USMF to WestLB. (Compl. ¶ 9, Ex 3, § 3.06.)

As of September 30, 2011, USMF had foreclosed on approximately 82 Mortgages, rendering the underlying properties REO Properties under the Transaction Documents. (Compl. ¶ 12.) These 82 REO Properties carry loan balances of approximately $19.2 million. (Id.) WestLB alleges that BAC has foreclosed upon an additional 104 loans that have not yet been listed as REO Properties. (Compl. ¶ 13.) These likely REO Properties would carry additional loan balances of approximately $ 27.6 million. (Id.)

BAC has not disposed of the REO Properties following default. (Compl. ¶ 41.) Instead, USMF directed BAC to rent the REO Properties rather than sell them, and BAC has rented them out. (Compl. ¶ 42.) USMF's motivation in directing the rental of the properties was a desire to avoid the effect on its balance sheet of selling the properties at a loss, given the general decline in housing prices. (Compl. ¶ 41.) USMF neither sought nor received WestLB's consent before instructing BAC to rent the properties indefinitely. (Compl. ¶ 42.) Similarly, BAC made no effort to verify whether WestLB consented to the rental of the REO Properties. (Compl. ¶ 43.) In servicing mortgages other than the USMF portfolios, BAC has not held onto similar REO Properties, but has promptly disposed of them. (Compl. ¶ 50.)

Event of Default Under the WWMA

The WWMA provides that an Event of Default will occur if USMF "shall fail to perform or observe any . . . covenant or agreement under any Transaction Documents to be performed by it and such failure [remains] unremedied for a period of [10] Business Days after written notice thereof shall have been given to [USMF]." (Compl., Ex. 1, § 7.1(v).) The Servicing Agreement is a Transaction Document for purposes of this provision of the WWMA. (Id., Ex. 3, § 1.01.) WestLB alleges that USMF's failure to seek WestLB's consent before

directing BAC to rent the REO Properties (allegedly a breach of § 3.06 of the Servicing Agreement) constitutes an Event of Default under Section 7.1 of the WWMA. (Compl. ¶ 62.) Section 7.2 of the WWMA provides that, upon an Event of Default, WestLB may "by notice to Borrower: declare that all or part of the Loans outstanding under the Transaction Documents, are: (a) immediately due and payable; and/or (b) payable on demand by the Lenders." On July 29, 2011, WestLB informed BAC and USMF that it had accelerated repayment of all the outstanding loans pursuant to section 7.2 of the Mortgage Agreement, rendering all of the outstanding loans immediately due and payable. (Compl. ¶ 66.)

Defendants' Allegedly Wasteful Expenditures

BAC and USMF have expended large sums of money in an attempt to prolong the rental viability of the REO Properties. (Compl. ¶ 55.) For example, in January 2011, USMF and BAC spent approximately $63,000 (after deducting rental income) in the form of servicer advances in connection with the rentals. (Compl. ¶ 58.) The Servicing Agreement permits BAC to collect reimbursement only for those expenditures that were "necessary or appropriate in [its reasonable business judgment] for the conservation, operation, management, maintenance and disposition of any Mortgaged Property." (Id., Ex 3, § 3.03(v); § 4.01(ii).) WestLB characterizes the $63,000 as "squandered," and asserts that the sums expended were not necessary, appropriate, or within reasonable business judgment for the "proper operation, management and maintenance of the REO Properties," because those properties are "unlikely to produce rental profit sufficient to cover operating costs or the interest and principal payments owed to WestLB." (Compl. ¶ 59.)

BAC's Obligation to Indemnify WestLB

Section 7.01(a) of the Servicing Agreement provides that BAC will indemnify WestLB from and against any and all "damages, losses, claims, taxes, liabilities, costs, expenses [and] reasonable attorneys' fees" arising out of or relating to BAC's "failure . . . to perform its duties, covenants or other obligations" and "any action or omission . . . which reduces or impairs the rights of the Owner or the Lender with respect to any Mortgage Loans or the value of any Mortgage Loans." (Comp. ¶ 67, Ex. 3.)

USMF's Obligation to Indemnify WestLB

Section 8.1 of the WWMA requires USMF to indemnify WestLB from and against any and all costs and expenses, including reasonable attorneys' fees, "arising out of or as a result of [the WWMA] or any other Transaction Document." (Compl., Ex 1, § 8.1; see also Ex 1, § 8.3 (USMF will pay WestLB "on demand any and all costs and expenses of ... [WestLB], if any, including reasonable counsel fees and expenses in connection with the enforcement of this Agreement and the other documents . . . or the administration of this Agreement following an Event of Default.") More specifically, USMF must indemnify WestLB for USMF's failure "to keep or perform any of its obligations, express or implied, with respect to any Mortgage Document, or to perform its duties, covenants or other obligations in accordance with the provisions of [the WWMA] or any other Transaction Document." (Compl. ¶ 70; see also Ex 1, § 8.1)

Between December 13, 2010, and July 20, 2011, WestLB repeatedly notified BAC and USMF that they were in violation of both the Servicing Agreement and the WWMA. (Compl. ¶ 75.) On July 6, 2011, WestLB wrote to Defendants' counsel, notifying them that their

breaches triggered an Event of Default under the Transaction Documents and that they had ten business days to remedy those breaches before WestLB would exercise its rights. (Compl. ¶ 76.)

There is no allegation that any payment due to WestLB under the Transaction Documents has not been made.

WestLB filed its Amended Complaint on November 8, 2011, asserting the following causes of action against all defendants: 1) breach of contract; 2) specific performance; 3) waste; and 4) indemnification.

## DISCUSSION

Standard of Review

When deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss a complaint for failure to state a claim, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). While detailed factual allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Pleadings consisting only of "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S., at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations and citations omitted).

In determining a Rule 12(b)(6) motion to dismiss, the Court may consider the complaint, any exhibit attached to the complaint, materials incorporated in the complaint by reference, and documents that, "although not incorporated by reference, are 'integral' to the complaint." Schwartzbaum v. Emigrant Mortgage Co., No. 09 Civ. 3848, 2010 WL 2484116, at *3 (S.D.N.Y. June 16, 2010). A document is integral to the complaint if the complaint "relies heavily upon its terms and effect." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted). Here, in addition to the Complaint, the Court considers the Transaction Documents (attached as Exhibits 1 - 5 to the Complaint).

Breach of Contract Claim Against USMF

To state a claim for breach of contract, a party must allege the existence of a contract, breach of the contract, and damages suffered as a result of the breach. Nat'l Mkt. Share v. Sterling Nat'l Bank, 392 F.3d 520, 535 (2d Cir. 2004); see also Harris v. Seward Park, 70 A.D.3d 425, 426 (N.Y. App. Div. 2010). WestLB alleges that USMF breached the Servicing Agreement by "failing to seek WestLB's consent before directing BAC to rent the REO Properties." (Compl. ¶ 94.) Based on the plain language of the Servicing Agreement, WestLB has failed to state a claim for breach of contract against USMF.

The relevant section of the Servicing Agreement provides that:

> The disposition of REO Property shall be carried out by the Servicer in a commercially reasonable manner for cash at such price, and upon such terms and conditions, as the Servicer deems to be in the best interest of the Owner, the Agent and the Lenders and, as soon as practicable, the Servicer shall be entitled to be paid or reimbursed for all standard and customary costs and expenses of such sale, including, without limitation, all Liquidation Expenses; provided the Owner [USMF] may direct the Servicer [BAC] with respect to any such disposition so long as the Agent [WestLB] consents to such direction (which consent shall not be unreasonably withheld or delayed).

(Compl., Ex 3, § 3.06.) This section speaks only to the disposition via a cash sale of REO Property by the Servicer (BAC). The final provision of this section authorizes USMF to direct BAC with respect to any such disposition - that is, with respect to cash sales of REO Properties. The Servicing Agreement is silent as to whether USMF must obtain WestLB's consent before directing BAC with regard to the *rental*, as opposed to the sale, of the REO properties. Accordingly, WestLB has failed to identify a breach of contract by USMF. In light of this failure, WestLB also fails to identify a factually plausible basis for its claim for acceleration, which requires a demonstration that USMF has failed to "perform or observe any . . . covenant or agreement under any Transaction Documents" and consequently triggered an Event of Default. Compl., Ex. 1, §§ 7.1, 7.2; Ex. 3, § 1.01.)

Breach of Contract Claim Against BAC

WestLB claims that BAC breached the Servicing Agreement by: "(1) failing to dispose of the REO properties promptly and prudently; (2) refusing to seek WestLB's consent, or to ensure that it had been properly obtained, prior to renting the REO properties; and (3) wasting resources on expenditures related to the continued rental of the REO properties.[1]" (Compl. ¶ 90.) As explained above, the relevant language of the Servicing Agreement does not require WestLB's consent with respect to any action except direction concerning the cash sale of the REO Properties, rendering unsustainable the breach of contract claim premised on lack of consent.

---

[1] The Court has reviewed thoroughly the Complaint and finds that its only allegations as to a breach of contract based on BAC's wasteful expenditures are conclusory and, for that reason and the reasons set forth infra, are insufficient to state plausibly a claim for breach of contract or for waste.

The Servicing Agreement grants BAC "full power and authority, acting alone" to service the Mortgage Loans by taking actions that BAC deems "necessary or desirable and consistent with the terms of [the Servicing Agreement] and each other Transaction Document." (Compl., Ex. 3, § 3.01(a).) The Servicing Agreement further provides that BAC is to manage the REO Properties solely for the purpose of their "prudent and prompt disposition and sale"; that BAC "shall attempt to sell [the REO Properties] (and may temporarily rent [them]) on such terms and conditions as [BAC] deems to be in [USMF and WestLB's best interests]"; and that BAC shall manage the REO Properties in the same manner that it manages similar properties for its own account "and in the same manner that similar property in the same locality as the REO Property is managed." (Id. § 3.06.)

WestLB alleges that, rather than disposing promptly of the REO Properties, BAC has continually rented the properties at a loss (Compl. ¶¶ 15, 43); that the income generated by the properties is insufficient to cover the debt USMF owes WestLB (Comp ¶¶ 15, 47); that renting the properties benefits USMF at WestLB's expense and "increases WestLB's expected loss on its loans to [USMF]" (Compl. ¶ 45); that the "rental and sale values of the REO Properties have steadily declined, depleting any funds available to repay WestLB" (Compl. ¶ 48); and that "the longer BAC holds the properties, the greater the loss to WestLB." (Id.) Most of the Complaint's allegations that BAC breached the Servicing Agreement by renting rather than selling the REO Properties are conclusory and merely parrot the terms of the Servicing Agreement. (See, e.g., Compl. ¶ 44 ("[r]ental of the properties is neither 'proper' nor 'prudent' under the Servicing Agreement, nor is it in WestLBs best interests").) Given WestLB's own acknowledgment that the real estate market has declined since the parties initially entered into their 30-year-plus loan agreements (Compl. ¶ 41), the Complaint fails to allege

plausibly that BAC's failure to sell the REO Properties immediately, in a depressed real estate market, during the early years of a multi-decade loan repayment contract that is not currently in default, was neither prompt nor prudent.

WestLB does allege that "similarly situated servicers have sold similar REO properties when rental income cannot meet existing principal and interest obligations" and that "BAC itself has disposed of similar properties held pursuant to servicing agreements with other parties." (Compl. ¶¶ 49-50.) However, these allegations too are conclusory, in that they simply assert that the other REO sale situations are similar to the instant situation without addressing crucial details such as property type, loan term and payment status, and real estate values to supply the requisite plausible factual basis for WestLB's claim of breach.

Finally, the Complaint alleges no facts regarding any damages attributable to BAC's alleged breach of its obligation to promptly and prudently dispose of the REO Properties – notably, there are no allegations of any failure on the part of the Defendants to make the principal and interest payments required by the contract payment schedule, which extends to 2038. At most, WestLB alleges that it is damaged because there has been a general decline in the value of the REO Properties. Any such claim must fail, as allegations of a decrease in the value of collateral are insufficient to adequately plead damages for a breach of contract to pay money. See, e.g., Bank Midwest, N.A. v. Hypo Real Estate Capital Corp., 2010 WL 4449366, at *3 (S.D.N.Y. Oct. 13, 2010) ("absent a default, [plaintiff's] claim for damages based on the subordination of its security interest is an undefined future harm [that] is too speculative to constitute a compensable injury") (internal quotations omitted). In conclusion, WestLB's allegations are insufficient to state plausibly its claim that BAC breached the Servicing Agreements by renting, rather than selling, the REO Properties.

Waste Claim Against BAC and USMF

WestLB claims that Defendants "committed waste by knowingly maintaining possession of the properties, and expending resources in connection with their management and upkeep, while their value decreased, rather than selling the properties while they retained some value." (Compl. ¶ 101.) New York courts have recognized two general categories of waste: 1) "a substantive cause of action for waste against one in control of real property who does no more than allow the property to deteriorate and decrease in value"; and 2) "a cause of action for waste by a mortgagee against a mortgagor who impairs the mortgage." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, 837 F. Supp. 2d 162, 206 (S.D.N.Y. Dec. 5, 2011). Here, WestLB does not claim that the REO Properties themselves are deteriorating or being used for purposes other than generating revenue to be applied to Defendants' obligations under the Transaction Documents, and so appears to be proceeding under the second theory of waste, which requires a plaintiff to allege: "(1) a wrongful act of the defendant; (2) impairment of security resulting from that act; and (3) the amount of such impairment." Id. WestLB's waste claim does not identify any impairment of the value of the security (i.e., the REO Properties) arising from BAC's alleged acts of waste. Rather, WestLB's complaint concerns BAC's application of monies (presumably the proceeds of the property rentals and other loan revenue) to maintain or improve the REO Properties for rental purposes. WestLB does not, however, identify any provision in the Transaction Documents that gives it the right to direct the servicer (BAC) as to property maintenance expenditures or gives WestLB any other specific interest in monies administered by BAC under the Servicing Agreement. Additionally, as explained above,

WestLB's claim for damages is speculative and unspecific. Accordingly, the Court finds that WestLB has failed to state a claim for waste against the Defendants.

Specific Performance and Indemnification Claims Against BAC and USMF

Because the Complaint fails to state claims for breach of contract and waste against the Defendants, the specific performance and indemnification claims against Defendants must necessarily fail.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Complaint are granted. This Memorandum Opinion and Order resolves docket entry nos. 33 and 41. A Final Pretrial Conference is scheduled for Friday, January 25, 2013, at 11:00 a.m., in Courtroom 11C.

Dated: New York, New York
September 28, 2012

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge